Griffith's Estate.

Argued April 15, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Anthony Cavalcante,* and with him *J. R. Smiley,* for appellant.

*H. S. Dumbauld,* for appellee.

Opinion by Trexler, J., July 2, 1929:

On May 6, 1927, Charles W. Rush, the executor of James M. Griffith, filed his first and partial account to which the heirs of the decedent filed exceptions. There are two specific assignments of error, the third being a general assignment to the entering of the decree.

The first assignment charges that the court erred in allowing the executor an attorney's fee of $17,500. It is claimed that the amount is exorbitant. It appears by the account that the total assets were $246,000. The executor is a member of the bar and the orphans' court, in fixing his commissions, took into considera-

tion the compensation claimed by him as an attorney-at-law. In whatever capacity the amounts were earned, it was the duty of the court to fix what they were reasonably worth. The item objected to appears in the account as follows: "C. W. Rush, executor's commission and attorney fee, $27,500." It does not show what part of the charge is commission and what part is attorney fee, but at the audit, the accountant testified that $20,000 represented counsel fees and $7,500 commission and that $20,000 was a reasonable amount for the services rendered by him to the estate, that many of the loans of testator were difficult to collect because of the great number of persons involved in the financial distress due to the failure of a prominent man whose affairs were intimately connected with those of the decedent. He was compelled to bring suits, file transcripts, watch revivals and file claims in bankruptcy proceedings from October 3, 1913, to May 6, 1927, the legal services thus covering a period of about fourteen years. No other evidence on this subject was produced. The court reduced the amount of counsel fees to $17,500. We quote the comment of the court, "While this sum might seem to be exorbitant, yet under the conditions prevailing here during the time of the settlement of this estate it has been only the skill of counsel that so large a part of the estate has been conserved and we think that under the circumstances, when we consider this in connection with the commissions of the accountant, this sum is fair and reasonable."

The court evidently considered that the charge of 2½% as commission was low and that this justified a more liberal consideration of the claim for counsel fees. It is not unusual to allow more than the above percent where settlement of estate is protracted by litigation and the duties of an accountant are unusually

onerous, or the ability of the accountant has preserved the estate from serious loss: Lilly's Est., 181 Pa. 478; Sinnott's Est., 231 Pa. 299; Semple's Est., 189 Pa. 385. It is very evident that the lower court gave the matter very careful attention and we are not disposed to interfere with the exercise of its discretion. It is a matter peculiarly within the province of the court, who in most cases, is better able to judge as to the reasonableness of such charges than the appellate court and unless the discretion has been clearly abused, the judgment of the lower court in such matters must stand. There is a presumption that the decision of the lower court is right: Com. v. Traders & Mechanics Bank, 268 Pa. 526; Mitchell v. Liberty Clay Prod. Co., 291 Pa. 282, 291; Moats v. Thompson, 283 Pa. 313; Scott v. Carl, 24 Pa. Superior Ct. 460. The rule is fair compensation for the amount and character of the labor: Harrison's Estate, 217 Pa. 207; Reid's Estate, 250 Pa. 103; Taylor's Estate, 281 Pa. 440. The responsibility involved in large estates is also an element to be compensated, though not a controlling one: Wistar's Estate, 192 Pa. 289. We will not disturb the finding of the lower court that the charges are reasonable.

The appellant argues that even if the amount fixed as compensation to the accountant as attorney be reasonable, an attorney serving in a fiduciary capacity cannot charge commissions and attorney fees. In some jurisdictions this rule prevails, in others, the contrary, 24 C. J. 547, but in Pennsylvania the matter seems to have been definitely settled. An executor who also is an attorney and thereby has broadened the field of his activities in the settlement of the estate, should receive what his services are worth, irrespective of any particular designation which may be applied to such services. In Winsel's Estate, 19 Pa.

District Court 659, the late Judge PENROSE, judge of the orphans' court of Philadelphia County, stated, "That counsel was also one of the executors, does not under well settled principles, deprive him of the right to proper counsel fees." In the Estate of Michael Mc-Closkey, 11 Phila. Reports 95, Judge HANNA drew the distinction that for all services performed within the line of duty as an executor, he is confined to the commissions for services performed, but if an executor who is also an attorney-at-law should in the course of management of the estate perform duties which are ordinarily confided to an attorney, he is entitled to compensation therefor, citing, in re Mumma's Account, 6 American Law Register 489. See Kalbfell's Estate, 30 Pittsburgh Legal Journal N. S. 325. In Perkin's Appeal, 108 Pa. 314, it was held, "If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reasonable compensation as he would have paid had he been obliged to employ counsel. If authority for a principle so manifestly just and reasonable as this be required it may be found in Lowrie's Appeal, 1 Grant 373."

The second assignment is against the allowance, as a credit, of the amount paid as penalty imposed by reason of delay in paying within the time prescribed by law the collateral inheritance tax due to the Commonwealth. The penalty imposed was $4,030.80. The total amount of tax was $11,741.05. The testator died September 4, 1913. This sum imposed was paid as follows: $2,500 on May 2, 1916, and $9,241.05 on June 18, 1925. The lower court presents the situation in the following words: "No appeal was taken by the accountant from the imposition of the penalty of $4,-030.81, and according to his own testimony he did not pay the bulk of the tax for five years after nearly all

of the estate had been converted. The legatees called no witnesses, either as to this item or as to any other item of exception. There is no contradiction of the accountant's testimony that he promptly distributed the funds to the legatees as he received them. There is no dispute of the fact that a considerable portion of the estate was tied up for some time in litigation, making it uncertain just what tax would be imposed. It seems it could have been made to appear more clearly and definitely by the introduction of testimony just when other payments on account of taxes should have been made and were not made, so that we might ascertain the proper surcharge. In the absence of this proof, yet in the light of the admissions of the accountant himself, the estate suffered a loss it should not sustain.''

The court surcharged this accountant with $2,250. We see no reason why he should not be required to pay the whole amount. Common prudence would dictate that the tax should have been paid promptly. It was incumbent upon the accountant to present evidence to excuse his negligence. The reasons he gave are not sufficient. He should show by some definite presentation of figures that his withholding of the tax was justified. He had no authority to disburse the monies in his hands to the heirs, however insistent they were, unless they definitely knew that the payment depleted his balance to such an extent as prevented him from paying the tax, and that they so understood and agreed to the arrangement. No such testimony was produced. We are all of the opinion that the whole amount of the penalty imposed should be charged against the accountant. The second assignment of error is sustained.

The judgment is modified and the accountant is surcharged on the exception with $4,030.81 (including in

said amount $2,250—previous surcharges) and the record is remanded so that distribution may be made accordingly. Costs of the appeal to be paid by the estate.