## Mitchell's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

*Cuthbert H. Latta, Jr., James M. Brittain* and *Shippen Lewis,* for exceptants. *Joseph J. Brown* and *John Arthur Brown,* contra.

STEARNE, J., June 22, 1934.—The exceptions relate to the refusal of the auditing judge to surcharge executors because of the alleged unjustified retention of securities "inherited" from the testator and to the amount allowed by him for counsel fees and commissions.

Taylor's Estate, 277 Pa. 518, was the first case in Pennsylvania to define the liability of a fiduciary for retaining a nonlegal security owned by a testator. That case rules that, in the absence of specially conferred authority under the will, such a fiduciary has no right so to retain. However, when in fact the fiduciary does so retain, and a loss occurs, to escape liability the fiduciary must establish that the retention was "not a mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions". He is "expected to be ordinarily watchful and to exercise normally good judgment." What is or what is not "normally good judgment"; what constitutes "a mere lack of attention", or "the exercise of good judgment" depends upon the facts and surrounding circumstances in each particular case (p. 529). "The care demanded of a trustee in deciding as to the time for conversion is the exercise of ordinarily good business judgment or foresight." And it is particularly emphasized and pointed out (p. 526) that the rule as applied to executors or administrators is to be much more liberally construed than when applied to trustees. The Supreme Court in Brown's Estate, 287 Pa. 499 (the next case arising after Taylor's Estate), again stated the rule. Mr. Justice Kephart wrote (p. 501):

"The rule stated in Taylor's Estate as to such securities was that a fiduciary should not hold beyond a reasonable period investments made by the decedent in unauthorized securities unless specially authorized to do so, and that when a trustee continues to hold such nonlegal investments after a time when he could probably dispose of them and a loss occurs, he must be held liable for a failure to exercise due care; unless he shows that his retention of the securities in question represents, not a mere lack of attention, but an honest exercise of judgment based on actual consideration of existing conditions; in other words, he is expected to be ordinarily watchful and to exercise normal good judgment: Taylor's Est., supra, at page 528.

"This rule was not intended to hamper fiduciaries in the control and management of estates. They need not rush into a conversion of the securities left by the decedent and, under the whip of the law, sell them below what they might normally expect to receive for them, thus causing an estate to shrink out of all proportion to any possible benefit that might arise through a strict application of the rule. One may readily see how too literal enforcement of the rule could be taken advantage of. In considering the sale of investments that have no open market, or bonds in a depressed market, or stock whose intrinsic value is established, paying dividends equal to and above what would be a normal interest rate, reasonable latitude, according to the circumstances, must be allowed a fiduciary in the disposition of such property."'

Taylor's Estate and Brown's Estate have since been cited with approval on numerous occasions by the Supreme Court. The latest cases applying the rule are Dempster's Estate, 308 Pa. 153, and Curran's Estate, 312 Pa. 416. These principles enunciated in the foregoing decisions of the Supreme Court consti-

tute for fiduciaries and their counsel markers of bounds and signposts of direction in the administration of estates and trusts.

But the gravamen of exceptants' demand for surcharge is the claim that an affirmative duty rested upon the executors to convert all nonlegal securities within 6 months of the grant of letters, in the absence of testamentary exemption, or of circumstances which warrant an exception to the rule. The exceptants rely chiefly upon Curran's Estate, 18 D. & C. 103, and Tyson's Estate, 80 Pa. Superior Ct. 29. The auditing judge, in our opinion, correctly and accurately answered this contention. In both the cases above cited—one relating to securities and the other to precious stones—the fiduciaries were fully aware that distribution would be required at the expiration of 6 months, but nevertheless took no steps to convert and proved no circumstances to justify the retention. In Curran's Estate, no exceptions were filed to the auditing judge's ruling. Judge Lamorelle, in Curran's Estate (p. 105), quotes Judge Gummey, whose opinion was affirmed per curiam in Borell's Estate, 256 Pa. 523. These words are most appropriate to the present facts and, while already quoted in the present adjudication, nevertheless are repeated by way of emphasis (page 524):

"Ordinarily it is the duty of an executor to convert personal property within the year following the grant of letters testamentary (Merkel's Est., 131 Pa. 584, 612), and the rule is to be more strictly construed where the rights of creditors are affected than in cases where the estate is solvent; but the rule is not an unbending one (Dauler's Est., 247 Pa. 356); if it were, the result would be to divest an executor of a large part of the discretion which the testator gave him and would in many instances impose great hardship upon the residuary legatees, who have the right to take in kind the securities remaining after the payment of the testator's debts, the costs of administration, and any specific or pecuniary legacies given by the will."

In the instant case, the trust company is sole trustee, is guardian of the estates of the life tenant's grandchildren, and by virtue of the trusteeship also represents the estates of the unborn issue of the grandchildren, who take in remainder. The son, life tenant to the extent of one half of the residuary estate, is also a coexecutor. Under the then existing conditions, after most careful consideration, the executors deemed it most unwise to sell and decided to retain. Representing the interests of all parties, the executors concluded upon advice of counsel to file their account in due course and to apply to the auditing judge for permission to accept distribution in kind under the provisions of section 49 (e) 1 of the Fiduciaries Act of 1917. An account was in fact duly prepared but was not filed, on advice of counsel, because of the threat of litigation (which thereafter quickly developed) concerning the sale of the stock of Union Bank & Trust Company. In our opinion, such legal advice was not without merit. If the litigation proved adverse (and it did in the lower court), the estate would have been subjected to a possible liability of over $300,000, and in addition thereto would have been liable to a large assessment upon the stock. Had such an account been filed at the time contemplated, an auditing judge would undoubtedly have suspended any confirmation until the litigation had terminated. Promptly upon the decision of the Supreme Court (307 Pa. 488) the account was duly filed, audited, and its absolute confirmation is now being questioned. While letters testamentary were granted February 2, 1929, and the account was not filed until November 3, 1932, such delay was not attributable to inattention. Upon the contrary, the delay was because of the situation of this estate, and upon the advice of counsel. We are of opinion that the circumstances

of the case fully warranted and justified retention of the securities during this period. The retention was further justified under the then existing facts because based upon ordinary good and sound business judgment. Immediately upon the qualification of the executors, they made a most thorough investigation and survey of all the securities of the estate. The son already knew about the investments. He himself owned very many similar securities and had assisted his father, the decedent, in the selection of the same. The experienced officers and investment of securities committee of the trust company executor subjected the securities to the closest scrutiny. After many conferences, some of the securities were directed to be sold and others to be retained. The consideration and close attention has been continued down to date, and still prevails. An evidence of the good judgment and efficient attention of the executors was the decision to sell the stock of Union Bank & Trust Company. It was determined to sell at once. The sale netted the estate $280,000. A delay in consummation of but a few days would have resulted in a total loss to the estate, because such stock within that time became wholly valueless. The administration commenced in the midst of high values, and the financial prognosis undoubtedly was that not only would the high values be maintained but greatly increased values would probably be reached and likewise maintained. As a matter of fact, the high market continued for about 9 months thereafter, and was followed by the unexpected financial crash of October-November 1929, when the values of all securities receded to unbelievably low levels. But, under the evidence, the retention was not due to lack of attention but because of the exercise of what the executors deemed—in company with a host of others—to be wise and prudent business judgment. And this was with the consent and in the interest of all parties concerned, and under the advice of counsel. The guardian and trustee ad litem commenced his duties long after the account had been filed. Hindsight will not be permitted to be substituted for foresight. We are unanimously of opinion that the auditing judge did not err in his findings of fact and conclusions of law in refusing to surcharge. We decide, as did Judge Penrose in Coggins' Appeal, 3 Walker 426, 427, that, while there has been no abuse of discretion up to the filing of this account, yet, if there is a longer delay in converting nonlegal securities, we will, on the settlement of future accounts, determine the question as to whether the discretion of the trustee has been properly exercised.

Ordinarily, the finding of an auditing judge as to allowance of commissions and counsel fees will not be disturbed unless there is manifest error. As to the commissions, we cite Williamson's Estate, 2 D. & C. 594, Rumsey's Estate, 287 Pa. 448, Frick's Estate, 13 D. & C. 536, and Griffith's Estate, 96 Pa. Superior Ct. 242. And as to counsel fees see Knoppel's Estate, 3 D. & C. 707, Dunmore's Estate, 14 D. & C. 630, Bergdoll's Estate, 25 Dist. R. 102, Kujack's Estate, 4 D. & C. 414, Wolf's Estate, 22 Dist. R. 541, Merchant's Estate, 29 Dist. R. 299, Fisher's Estate, 65 Pa. Superior Ct. 297, McNichol's Estate, 4 D. & C. 338, Mendenhall's Estate, 97 Pa. Superior Ct. 582, Wasserman's Estate, 13 D. & C. 354, and Huff's Estate, 300 Pa. 64.

The personal estate of this decedent was inventoried at upwards of $1,800,000. The administration has been extremely arduous and includes the supervision and management of a large active business. The shrinkage in values at the present market prices of securities has been through no fault of the executors. Over $300,000 was salvaged, and its retention defended, which required litigation extending to the Supreme Court. The auditing judge was thoroughly familiar with all the facts, and we do not propose to disturb his conclusions as to either commissions or counsel fees, except as hereinafter stated.

Concerning the fee of John Hampton Barnes, Esq., it must be remembered that he is the general counsel for the trust company. Messrs. Brown represented the executors. It was not until the trust company was sued in its individual capacity that Mr. Barnes appeared as counsel for the trust company. In the court of common pleas, in the Supreme Court, and before the auditing judge Mr. Barnes consistently appeared for the trust company, not as an executor, but as a corporation. Obviously, the reason that the suit relating to the sale of the Union Bank & Trust Company stock was against the trust company individually, instead of against the estate, was due to the instructions given by the trust company to the buyer at the time of the consummation of the sale. The buyer was directed to pay the proceeds of the sale by way of a clearing house certificate which he was instructed by the trust company could be made out, at the election of the buyer, "either to the estate or to the trust company". The purchaser chose the latter course. When the transaction was subsequently questioned, necessarily, the trust company, as a corporation, and not as an executor, was on record as sole defendant. In the event that the judgment against the trust company had been sustained, a real question might have arisen as to the right of the trust company to recoup itself from the assets of the estate. It may very well have been that as between the estate and the trust company, in the collection of the proceeds from the sale, the bank was acting merely in its capacity as a bank for the transmission of the fund. We appreciate that the Supreme Court did say (307 Pa. 488, 500) that the trust company had no interest except as coexecutor. Yet, in all this litigation, Mr. Barnes was chiefly and principally—if not solely—defending his corporate client in its individual capacity. His extremely able and successful efforts ultimately enured to the benefit of both the trust company and the estate. While we have not the slightest criticism as to the size of Mr. Barnes' fee, yet the majority of the court are of opinion that in justice and in equity one half of the fee should be paid by the trust company individually. Therefore, and solely for the reasons above narrated, we direct that but $10,000 be allowed to Mr. Barnes as compensation due by this estate, and that the balance, or $10,000, be stricken from the account and repaid to the estate.

The son of testator, a life tenant as to one half of the residuary estate, excepts to the adjudication of the auditing judge which awarded interest at the rate of 6 percent per annum on each of the $75,000 trust funds (for the use of grandchildren) from the date of death to the date of payment of the principal to the trustee. As the grandchildren are descendants of testator, the auditing judge was clearly correct in this award under section 21 of the Fiduciaries Act of 1917. See Steubner's Estate, 16 D. & C. 309, and Band's Estate, 103 Pa. Superior Ct. 553.

All exceptions are dismissed, and the adjudication, modified as above, is confirmed absolutely