Eckels' Estate

*C. Townley Larzelere* and *Thomas M. Hyndman,* for accountant.

*Therman P. Britt* and *William T. Connor,* for exceptants.

*Elmer L. Menges,* of *Ditter & Menges,* and *James F. Shrader,* for widow and son.

*Samuel H. High, Jr.,* for Philadelphia College of Pharmacy and Science, claimant.

HOLLAND, P. J., January 29, 1940.—Howard S. Eckels died on April 5, 1937, leaving a last will and testament

bearing date October 18, 1935, with codicil thereto dated March 28, 1937, all duly probated on April 10, 1937, upon which the present letters were granted the same date to the accountants. . . .

The account was filed January 7, 1939, and a supplemental account submitted at the audit. . . .

Philadelphia College of Pharmacy and Science presented a claim in the sum of $2,000, alleged to be for a pledge in that amount as a part of a campaign for funds being conducted at the time of the alleged pledge, November 23, 1936.

The evidence of claimant consists of a letter dated November 23, 1936, to Dr. Wilmer Krusen, president of the Philadelphia College of Pharmacy and Science, Dr. Krusen's testimony, and the testimony of John E. Kramer, registrar and secretary to the board of trustees.

Objection was made to the testimony of Dr. Krusen and we must sustain the objection as he was president of claimant college. See opinion of Judge Stearne reviewing the authorities in Groome's Estate, 35 D. & C. 535. The same exception was taken to the testimony of John E. Kramer, and we held the same under advisement. We must overrule the exception to the admissibility of his testimony, as the same rule in Groome's Estate, supra, does not apply to him. He is not an officer or member of claimant but is registrar and secretary of the board of trustees, which is a position of employment.

We are of the opinion that the letter of decedent under date of November 23, 1936, to Dr. Krusen is sufficient in itself to constitute an enforcible pledge. In the letter he does not actually use the word "pledge", but he clearly indicates his agreement to pay the claimant $2,000 in two payments, April 1, and October 1, 1937. According to Kramer's testimony, it was put into the budget as an anticipated receipt, and the nonpayment of it and similar subscriptions caused a deficit. The form of the letter and the concurrence of the campaign justified claimant

and the other subscribers in relying on the promise to pay and they did so rely.

We are of the opinion, therefore, that it is within the class of enforcible pledges. The claim is allowed in the sum of $2,000.

Decedent died seized of real estate in Florida, New Jersey, and Maine. The account includes the proceeds of the sale of real estate in the State of Florida distributed to the accountants by the ancillary executor, and income from real estate situate in the State of New Jersey. The widow, although she filed her election to take against the will in Pennsylvania, has not filed any election to take against the will in any jurisdiction in these three respective States of Florida, New Jersey, or Maine. The question is submitted to the court as to what interest she has in the proceeds of real estate, and income from real estate, now accounted for, derived from these three foreign States.

It is conceded that the widow has not filed any election to take against the will in any jurisdiction of the situs of real estate in these foreign States. It is further conceded that, according to the law of those States, the time for her filing an election to take against the will has expired. It must be conceded, as a conclusion of law, that the law of the situs of the real estate governs its disposition and the interests of all persons therein, generally. Had testator died intestate, the laws of the situs of the real estate governing its descent from decedent would have governed and would have determined the interests of all persons therein. The will, if it is proven in the jurisdiction of the situs of the real estate, will govern, provided it is executed in accordance with the laws of the situs as to the formalities required to be in a will to make it effective to pass real estate.

We are of the opinion that where any of this real estate is sold and the proceeds accounted for by these accountants in this court, or where these accountants collect rent

from this real estate, the will is the law governing the distribution of such proceeds of real estate and rents as established by its probate in those foreign jurisdictions, and those funds come from those foreign jurisdictions, impressed with the law of those jurisdictions governing its distribution. See our opinion in Fox's Estate, 55 Montg. 110 (1939).

We are, therefore, of the opinion that the widow of decedent takes only such interest in these proceeds of real estate and rents as she would be entitled to under the terms of the will. The entire net rents therefore should be awarded to her, these properties and the proceeds thereof, upon sale, being a part of the residue of the estate, and the proceeds of sale of real estate from these foreign States, now accounted for, should be awarded to the trustee to pay the income thereof to her for life. Award will be so made. . . .

The thirty-second exception is to the payment to the individual executor and trustee of a counsel fee of $7,500, he being a lawyer and having been the legal counsel for himself and his cofiduciary throughout the settlement of the estate. The executors charged five percent commissions upon the gross value of the principal and income of the personal property and upon income of real estate.

The question presented is, whether a fiduciary who is also a lawyer can have both an attorney fee and a commission as fiduciary. Counsel for exceptant maintains in its brief that the fact that Mr. Hyndman, one of the executors, is a lawyer precludes him from any attorney fee if he takes his commission as fiduciary, unless he can show extraordinary legal services. Counsel for accountant in his brief contends in effect that no such question even exists. That there are several cases where this question was squarely raised on exception is proof enough that it is no figment of the imagination, as we shall see.

We have examined what we believe to be every reported case on this subject in Pennsylvania. As to exactly what they hold, it is confusing and obscure. Excerpts from all

these decisions may be quoted, which appear to decide the question both ways, but when read as a whole seem to decide in most of the cases upon evidence of extraordinary legal services.

In all these cases, each court that passed upon the question seems to have decided the particular case before it according to what it regarded as right and just, without embarrassing itself with enunciating any discernible principle as a basis for its conclusion.

It would be a great advantage if the court of last resort would settle this irritating question by declaring unequivocally: (1) Whether the fact that a fiduciary is at the same time a lawyer has any bearing *at all* upon his right to collect an attorney fee; (2) whether in such case he is entitled to a fee for *ordinary* services or only for *extraordinary* services; (3) whether the fact that he is the *sole* fiduciary has any bearing upon his right to collect a fee, as distinguished from the case where he is a *cofiduciary* with one or more others.

Considering the cases chronologically, the question first appeared in this Commonwealth in 1855 in In re Mumma's Account, 5 Clark 424, 5 Am. Law Reg. 489, 1 Pears. 394. The court in this case reviewed the authorities up to that time. The court pointed out that up to that time there was no controlling decision on the subject in Pennsylvania, and observed that the auditor had adopted the English rule that the attorney who was the guardian of two minors could not be paid a counsel fee. The court then stated that the rule in Pennsylvania was different. The court then reviewed some authorities of other jurisdictions, including Alabama, the rule in which latter jurisdiction the court adopted, to the effect that for advice or other small acts done in performance of the trust, that is for routine matters, the attorney could not be compensated, but for litigation of importance to the estate, or, we take it, other *extraordinary* services he could be compensated in the amount determined to be proper according to the usual rules. The auditor had

allowed, in the important litigation which had practically realized the entire estate of the minors, a fee to the counsel assisting the guardian, who was himself a lawyer, but had refused the fee claimed by the guardian for participating in this important litigation. The court overruled the auditor and allowed the guardian the attorney fee claimed by him in compensation for the litigation by which the estates of the minors were attained. We take it to be clearly held, therefore, in this report that it was only for *extraordinary* services that the guardian-attorney was allowed his attorney fee.

The next case is Lowrie's Appeal, 1 Grant 372, decided in 1856. In this case a sum was allowed the trustee for collecting funds due the trust, but was allowed an additional compensation in the nature of an attorney fee for conducting special litigation, obviously not in the routine duties of the counsel of an accountant, and outside of the duties of a trustee as such. This case also, we take it, authorizes compensation to the attorney for *extraordinary* legal services.

The next case, McCloskey's Estate, 11 Phila. 95, was decided in 1875. It is simply impossible to comprehend exactly what the court holds on this point in this case. It is an example of how the treatment of the subject of counsel fees, where a fiduciary is an attorney, has been so hopelessly confused with the question of his compensation as fiduciary. Exception was taken to the auditing judge's refusing to allow one of two executors, who was an attorney, a claim for professional services rendered the executors. The court in banc, commenting upon the presumption that the testator had a special object in selecting his executors, one being a collector of rents whom testator deemed qualified to take charge of and manage the estate, and the other a lawyer in active practice, whom testator regarded as well fitted to advise the accountants in legal matters, proceeded to say (p. 96) :

"If these executors had thought proper to engage the services and advice of other counsel, they would have

been entitled to an allowance for a fair and reasonable counsel fee."

This appears to hold that a fiduciary, even though an attorney, may employ another attorney and pay him. The court continued:

"But if they prefer to act as their own counsel, and manage the estate carefully and according to law, they cannot charge the estate therefor, and receive additional compensation for professional services."

This latter quotation is utterly meaningless as applying to services rendered by the one of the two executors who was the lawyer, as the court refers to "they" acting as "their" counsel. Obviously the executor who was not the lawyer could not have taken any part in the strictly legal advice. But to leave no stone unturned to put it beyond human comprehension, the following sentence appears: "This applies, however, to those services performed within the line of their duty as executors." The court begins by talking about counsel fees for an attorney and winds up in this latter sentence by referring back to their duties as executors. The balance of the opinion is as hopelessly confused between the discussion of attorneys' fees and compensation as fiduciaries, but as nearly as any light can be gotten through the opinion at all, it seems to hold that an attorney who is a fiduciary can only be compensated for *extraordinary* services performed as attorney.

Certainly, "to institute or defend suits, or other legal proceedings" is fairly descriptive of *extraordinary* services beyond the *ordinary* routine services usually performed by an attorney in settling an estate. The probability that this is what the court intended to hold is supported by the direction in the opinion that testimony be taken as to the "nature, extent, and value of the services."

The next case in chronological order is Perkins' Appeal, 108 Pa. 314, decided in 1885. Here the trustee was allowed a lump sum of $1,500 "for compensation as trustee."

It is not made clear what proportion of the fund is allowed as compensation as trustee and how much as attorney fee.

The recital of facts, however, preliminary to the opinion, clearly indicates that the legal services rendered by the fiduciary were of an *extraordinary* nature and, as the compensation was allowed upon these facts, we take it that the court intended to make the allowance on the ground that the legal services were *extraordinary*. At the bottom of page 318 of the report the court observes: "It cannot be doubted that for services of an extraordinary character, rendered by a trustee, he is entitled to extra compensation beyond the usual allowance for receiving and disbursing trust funds. If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reasonable compensation as he would have paid had he been obliged to employ counsel."

The next case is Price's Estate, 11 Dist. R. 229, decided in 1902. This case is the masterpiece of obscurity upon this subject. The controversy in this estate arose originally over the question of whether the accountants should receive five percent on the gross amount of the estate accounted for in the sum of $200,000, or whether they should receive a lesser amount. One of the accountants was a member of the bar and the other was not.

The accountants charged five percent commission as fiduciaries, which amount was reduced by the auditing judge to three percent. Apparently by exception to this action, the account came before the court in banc. The court in banc recited that the auditing judge had found the services not to be of an extraordinary character, and it reduced it to three percent, but that now he, the auditing judge (who must have been sitting with the court in banc) seemed to think he had committed error and that, while the accountants were not entitled to the full amount of the compensation charged by them, they were entitled to something more than had been allowed. Then

follows a recital by the court in banc of services rendered by both accountants that were *extraordinary* in the extreme beyond what an accountant ordinarily has to do, and were so extensive as to be a fairly classical example of *extraordinary* services performed by any accountant. Then follows this language by the court in banc (p. 229) :

"The auditing judge, realizing that the accountants were entitled to some compensation other than the usual commission, awarded to one of them, who is a member of the bar, and who filed the accounts and otherwise acted for the estate, an attorney's fee of $1000."

If this is a correct recital of what the auditing judge did, it apparently amounts to something like this: Realizing that the accountants were entitled to more than the three percent that he had allowed *both* of them, and thinking that *both* of them were entitled to a little more than this allowance, he gives *one* of the *two*, who happens to be the lawyer, a fee of $1,000.

In other words, the auditing judge, to give additional compensation to the fiduciaries, awards a counsel fee to *one* of the two. It is not disclosed how the non-lawyer benefited by this operation. The court in banc, having recited this amazing bit of logic on the part of the auditing judge, and apparently desiring to correct it, sustained an exception to the payment of the attorney's fee of $1,000, and modified the adjudication by allowing both the accountants three and a half percent commission, or one half percent more than had been allowed by the auditing judge. As far as we can observe, this case is absolutely useless and valueless as any guidance on the question which we are discussing.

The next case in order is Winsel's Estate, 19 Dist. R. 659, decided in 1910, which goes no further than to say that the mere fact that one of the executors is also an attorney does not deprive him of his right to proper counsel fees as counsel for the executors. This is universally agreed upon. It simply states the proposition negatively, that being an executor or other fiduciary does not per se

deprive the attorney who acted as counsel from fees in any case. It leaves open the question whether the services are *ordinary* or *extraordinary*, and, according to both the auditing judge and the court in banc, as they respectively describe the services, place them in the category of *extraordinary* services, and allow what they regard as reasonable compensation therefor.

The next case where the subject is dealt with is Griffith's Estate, 96 Pa. Superior Ct. 242, decided in 1929.

In this case there was only one executor, who was an attorney, and who charged commissions of $7,500, which amounted to two and one half percent, and $20,000 as a counsel fee. The lower court reduced the counsel fee to $17,500. As far as may reasonably be ascertained, the case was decided on the theory that the counsel fee was allowed for *extraordinary* services. The services are recited, and undoubtedly come within the category of *extraordinary* services. The services extended over a period of 14 years and involved many suits and various forms of litigation. The management, as a whole, of the executor resulted in the preservation of a large portion of the estate. The case, however, like most of the others, is entirely devoid of any definite, clearly-outlined principle or principles upon which the question can be settled. It might be observed that the court even goes out of its way to confuse the question of commissions and attorneys' fees. For example, in commenting upon the lower court's action, the opinion states (p. 244) :

"The court evidently considered that the charge of 2½% as commission was low and that this justified a more liberal consideration of the claim for counsel fee."

This seems to be quoted with approval and might intend an inference that commissions and counsel fees are properly considered together, and when going to one and the same person, one or the other should be modified downward.

The court then proceeds (p. 244) : "It is not unusual to allow more than the above percent where settlement of

estate is protracted by litigation and the duties of an accountant are unusually onerous, or the ability of the accountant has preserved the estate from serious loss". Which is meant? The duties of the accountant and his labors as fiduciary, or as attorney? Again at the bottom of page 245 of the report when the reader finds the exact question stated, and his hopes rise that it might be squarely decided, the opinion immediately breaks off, and returns to the same confusion between fiduciaries' commissions and attorneys' fees:

"An executor who also is an attorney and thereby has broadened the field of his activities in the settlement of the estate, should receive what his services are worth, irrespective of any particular designation which may be applied to such services."

The justice of the executor receiving what his services are worth, of course, is a principle with which the world will concur, but it leaves us entirely without any guide as to whether the fiduciary, being also an attorney, and doing the work of an attorney, has any bearing on his compensation as such. We take it, that by this statement the court means to say that the lower court may allow the charges as commissions or as attorney's fees at its own discretion, provided that the aggregate is not excessive for both services. However, if this is the intended principle of the opinion, it is not applied to the facts of this case, as the attorney's fee was clearly allowed on the ground of *extraordinary* legal services.

In Phillips' Estate, 21 D. & C. 464, decided in 1934, we have the only case wherein the decision squarely states and squarely decides the question as to whether an executor or fiduciary, who is the sole fiduciary, and who is an attorney at law, may or may not have the usual counsel fee for performing the usual and *ordinary* services of counsel to an executor. The court delivering that opinion seems to have penetrated Griffith's Estate, supra, with greater clarity than this court, as it cites Griffith's Estate as authority for the general proposition, that a sole fiduci-

ary, who is an attorney at law, may charge fees for performing the *ordinary* services of an attorney to such fiduciary. It states (p. 469) :

"As we understand it, then, the executor is entitled to an allowance for legal services where he performs services which the estate would have been obliged to pay for if he had employed counsel to perform the same services. . . .."

The court then allows to the executor-attorney a fee for filing a petition for the sale of real estate for the payment of debts, and for the drawing of two executor's deeds which, of course, were treated as ordinary services of an attorney.

Lastly, Dickel's Estate, 32 D. & C. 44, decided in 1938, seems to be the last reported case. As in most of the others, it decides the allowance of the fee on the ground of *extraordinary* services. There were two executors, one a lawyer, the other not a lawyer. The commissions allowed were divided between the two. Credit was taken for a fee to the one who was the lawyer. The fee was objected to and the auditing judge allowed it, the record showing that "he was called upon to perform many onerous services of a professional nature".

The court in banc, in approving the action of the auditing judge, clearly put the allowance of the fee upon *extraordinary* services. The extraordinary services are recited, such as necessity for foreclosing mortgages in default, or taking properties over in possession as mortgagee.

From these authorities we extract the following principles:

1. A lawyer who is the sole fiduciary cannot take commissions as fiduciary, and a fee as attorney, for the ordinary and routine work done as attorney to the fiduciary. He must choose between the two. But, even if he is the sole fiduciary, he may take his commissions as such and receive also an attorney fee for *extraordinary* services.

2. Where there are two or more fiduciaries, one or more of whom is or are a lawyer or lawyers, he who is a lawyer can act as counsel for the fiduciaries generally, and be paid attorney fees for *ordinary* and *extraordinary* legal services according to the usual rates, the same as if he were not one of the fiduciaries. He may also receive his share of commissions as fiduciary.

3. Where the sole fiduciary is a lawyer, or one or more of a number of co-fiduciaries is or are a lawyer or lawyers, nevertheless, the fiduciary or fiduciaries may employ an attorney (not one of the fiduciaries) to do the necessary legal work incident to the settlement of the estate or administration of the trust, in which case the attorney so employed may be paid from the trust at the usual and proper rates for *ordinary* or *extraordinary* legal work. .

Applying these rules to the exception with which we are dealing, the fee of $7,500 taken credit for is justifiable. In the first place, Mr. Hyndman is one of two executors, in which case he can be paid for *ordinary* services as well as *extraordinary* services, he having done all the legal work. The fee might be sustainable as being the amount properly charged for the ordinary routine services, by comparison with fees charged estates of the same size coming under the attention of this court. The minimum fee bill of the Montgomery County Bar Association in an estate of an approximate gross value of $366,000, as in this estate, for the ordinary routine services, suggests a fee of approximately $4,000. In most cases, however, counsel for the accountant for these ordinary services usually expect, and charge, somewhat in excess of the minimum fee suggested by the fee bill. As a matter of comparison, therefore, for the ordinary routine services in this estate, it would carry a fee of about $5,000. Were there only ordinary services in this estate, therefore, we would have to sustain the exception and reduce the fee below $7,500.

But, when we consider the extraordinary legal services rendered by Mr. Hyndman in this estate, which are obvious on the record, and which are amply supported by the testimony, there is no doubt left but that the fee is proper.

Aside from Mr. Swartz's testimony, in which he forcefully gives it as his opinion that the fee is more than moderate for the work done, a recital of only part of the work is convincing. There was the legal complication of selling the two close corporations, the valuations thereof, the adjusting of income tax due from the companies, the litigating of income tax returns and claims for certain specific years previous to decedent's death, the settlement of numerous claims against the estate, some of which had to be defended at one or more of the hearings, and numerous other services which clearly come within the classification of extraordinary legal services. Considering these extraordinary services, the fee is not excessive. The thirty-second exception is dismissed.

The thirty-third exception is to the credit of five percent on the approximate gross of the personalty accounted for, as commissions to the executors. Two questions are raised: First, whether the executors, being also trustees, and, therefore, entitled only to one commission for both functions, the accountants should be awarded any commission or compensation at this time; second, whether the amount of compensation is too great.

The first question seems to be answered by Gardner's Estate, 323 Pa. 229, and Quigley's Estate, 329 Pa. 281, cited on the brief of exceptant and accountants, to the effect that in such case the executor does not have to wait or be postponed to his commission until determination of the trust of which he is also trustee. We are, therefore, confronted with the question as to whether these commissions are too great.

We start with the admitted principle that the ultimate object is to determine the adequate and just compensation for the work done, and the employment of the mechanism

of a percentage basis is only a means to an end and not an end in itself. It has seemed, however, the most satisfactory way to get at the problem, and, in by far the most cases, a percentage is allowed at such rate as the particular court is of the opinion is just. The ordinary rate on personal property is five percent. This is reduced for ordinary services as the volume of the personalty accounted for rises, until in some estates, the percentage gets as low as three percent or even two and a half percent. In an estate of personalty in approximately the sum of $366,000, the amount allowed should not be more than three or four percent. Therefore, anything above that must be justified on the ground that more than the usual work was done. In the evidence brought out on cross-examination by counsel for exceptant, covering in all over 900 pages of testimony, there is not evidence lacking to the effect that this was one of the most troublesome, intricate, and tedious estates for executors to settle that ever came to the attention of this court.

There was the time-consuming and nerve-racking task of realizing the real worth from the two companies which have been many times referred to in our disposal of these exceptions, which companies were of a highly specialized nature, and, up until the last years of decedent's life, a distinctively one-man enterprise, built upon and sustained by the originality, initiative, and genius of decedent. This court throughout the hearings was impressed with the difficulty of this situation, and is of the opinion that the executors managed it with considerably more than average skill, together with capitalizing Mr. Hyndman's intimate contact with decedent for years prior to his death, and his intimate knowledge of decedent's affairs and these companies' affairs. Then there were innumerable highly speculative investments, such as the one in Indiana, several in Florida, and several real estate ventures in New Jersey, and many other speculative enterprises in which decedent had been ensnared and in which he had lost money, but out of which the executors

made every effort to realize any salvage possible. From the whole record of their performance we are unqualifiedly of the opinion that the executors are entitled to considerably more than the ordinary compensation, and that five percent on the personalty principal is not excessive. The thirty-third exception is dismissed. . . .