## Peck's Estate

*C. Wilson Austin*, for accountant.
*James W. Bertolet*, for exceptant and legatee.
*Frederick J. Bertolet*, for Commonwealth.
*L. R. Bingaman*, for County of Berks.

MARX, P. J., March 15, 1941.—Sadie B. Peck died November 6, 1939, unmarried and testate. Her will, dated September 16, 1939, was admitted to probate on November 8, 1939, and letters testamentary thereunder thereupon issued to Clarence C. Mendelsohn, executor named, the co-executrix, Elizabeth Peck, having renounced. . . .

Among the credits taken in the account are two, which were made the objects of exceptions. The accountant took credit in the sum of $468.98, executor's compensation. He also took credit in the sum of $500,

counsel fees paid C. W. Austin. The exceptions were taken by and in behalf of Elizabeth Peck, party in interest. The ground of the objections was the excessiveness of the charges made.

We will consider the second exception first.

It is apparent that the compensation taken was based at the rate of five percent on the aggregate of the debits in the account. The contention of exceptant is that the accountant is entitled to five percent on the aggregate of the inventory and appraisement alone, to wit, on the sum of $5,185.35. In support of the exception counsel cited Miller's Estate, 132 Pa. Superior Ct. 437, where, at page 441, the appellate court cites, as the rule to be followed, 'to allow commissions on the appraised value of the corpus at the time when it reaches the hands of the executor or administrator". Quoting from Gardner's Estate, 323 Pa. 229, 239, that court further said: "This is the value of the assets actually administered. Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless exceptional circumstances in fairness require that this be done". It will be noted that the basis of computation is the aggregate appraised value of the estate. The basis of computation may be increased or diminished in the face of exceptional circumstances. In this case we find such exceptional circumstances as will warrant the increase of the basis of computation from $5,185.35 to $9,379.70. The last item, above recited in the appraisement, $2,500, does not in reality represent an appraisement of the interest of this decedent in the estate of her husband. The husband died February 9, 1939. This decedent died November 6, 1939. The appraisement was filed February 14, 1940. The account in the deceased husband's estate was filed July 31, 1940; and adjudication thereon was confirmed September 7, 1940, and a decree of distribution brought to this estate an aggregate of $6,694.35, in cash and unconverted assets. It is thus apparent that the item of $2,-

500 included in the appraisement was a mere estimate of what final administration of the estate of the deceased husband would show in respect to the interest of his widow and sole legatee. What the accountant here designates a gain is in reality not a gain, an accretion, or an enhancement. The entire estate of the deceased husband, distributable to his sole legatee, was not in reality appraised. This accountant merely included in this inventory and appraisement an estimate of what would eventually be decreed in distribution. It will further be noted that, in the above-recited rule of computation, provision is made for the valuation of the asset when it comes into the hands of the accountant. The value of the asset in question was determinable after the adjudication on the account in the husband's estate. The executor's compensation was properly based upon the total estate which came into his hands, without any regard to enhancement or natural growth. The second exception is accordingly dismissed.

The remaining exception charges an excessive payment to counsel for the accountant.

The statute law neither recognizes nor allows counsel for a fiduciary, nor provides payment for services rendered by counsel. The courts, by what may be termed "the common law of the state" (Cahill's Estate, 14 Phila. 309) have always allowed the service and have directed payment on the ground of necessity. The services rendered must have been necessary and the compensation sought reasonable: Loew's Estate, 12 Phila. 165; Cahill's Estate, supra.

"It is a common error to suppose that the attorney employed by the executor or administrator is to be considered in the light of a creditor either of the decedent or his estate . . . [he] is the creditor of him by whom he was employed; that is, the executor or administrator. It is to him he looks for compensation. But it is the settled law of this State, and perhaps in all the States and in England, that it is to the interest and ad-

vantage of estates and parties interested that the executor or administrator should be entitled not only to a fair and reasonable compensation, but also permitted to expend out of the estate a just and reasonable sum for the employment of counsel. By this standard these expenditures are preferred and approved as credits in the settlement by the executor, administrator or other trustee. The first inquiry, therefore, is not the extent and variety of the services rendered by counsel at the request of the accountant, and their value, but what services and advice were requisite and necessary to enable him to adjust and settle the estate according to law, and what amount would be an adequate compensation for such professional services. It will thus be seen that the 'allowance' out of the estate must be for the usual and necessary services of the professional adviser, and reasonable in amount. If the accountant has unnecessarily incurred a large indebtedness to his counsel, it was at his own risk, and upon his individual liability": Cahill's Estate, supra, p. 309; Wood's Estate, 272 Pa. 8, 12.

The fact that the executor is an attorney at law does not deprive him of the right to serve as counsel in necessary legal proceedings involving the estate, nor the right to representation, in such matters, by counsel: Griffith's Estate, 96 Pa. Superior Ct. 242, 245. The question then comes to this: (1) What necessary legal services, in the interest of the estate, were rendered, and (2) what was the reasonable value of them?

There was evidence of the liquidation or collection of a bond and mortgage in the John T. Peck estate in which the widow, this decedent, was executrix. It is apparent that this accountant had an interest in the proper liquidation of the assets of the deceased husband's estate. Nevertheless, the widow and sole beneficiary in that estate was the acting fiduciary, this accountant was her counsel, and the course and cost of liquidation must be determined and borne in that estate

alone. That accountant received her compensation and her counsel was paid for services rendered in the liquidation and settlement of that estate, and no part of the burden thereof may be transferred or transplanted into this estate.

The Otis Steel stock and the Associated Gas & Electric Company debenture bonds required conversion. They were appraised $2,327 and lost $878.94 on sale. The remaining assets in this estate were cash $6,989.75, furniture $37.60, unconverted asset $25.35. Of that cash sum, $6,669, and the unconverted asset, $25.35, came by distribution out of the estate of the deceased husband, John T. Peck.

There is testimony that on numerous occasions, approximating twenty-five, the accountant spoke to or consulted with said counsel; that upon several occasions they had lengthy conversations. The precise need of these conferences and conversations is not disclosed. The accountant is a practicing attorney. It is likely that testatrix named him an executor because of his profession and believing that in the usual questions arising in the settlement of her estate he could and would apply legal requirements without extra expense to her estate. He was entitled to the benefit of counsel. This benefit, however, extended only to questions of importance to the estate as to which he as the fiduciary might be in doubt, or as to which he desired conference or consultation. The rule is well stated in the Restatement of Trusts, sec. 188, comment c:

"The trustee can properly incur expenses in employing attorneys, brokers or other agents or servants so far as such employment is reasonably necessary in the administration of the trust. He cannot properly incur expenses, however, in employing agents to do acts which the trustee ought personally to perform, as where it would be an improper delegation of his duties or powers to act through an agent . . . , or where although it would not be an improper delegation to em-

ploy an agent yet the service of the agent is one which is covered by the trustee's compensation."

In the case of Lechler's Appeal, 10 Sadler 547, 549, the Supreme Court, by Green, J., said:

'The question whether the investment was a safe one was not in any sense a legal question, but one of business only. Upon such a subject the opinion of a lawyer is of no more value than that of an ordinary business man; hence, the fact that the loan was made upon the advice of counsel touches but slightly the question of ordinary business prudence in making it." Cited in Reik's Estate, 18 D. & C. 252, 256.

Frequently the fiduciary consults and is governed by the answers of counsel in matters of exercise of discretion and prudence and impropriety of acts. These are problems arising in the authority of the fiduciary himself and, as stated in the above citation, remain without support by an opinion of counsel. The testimony of a member of our bar was received in support of the value of the services rendered. Admittedly that valuation was based on all the testimony which had been received, relevant or irrelevant, and without regard to the principles which we have here laid down.

Examining the testimony and weighing the services necessary and rendered to the administration of the estate, we come to the conclusion that the credit taken is excessive, and that full and proper allowance for services rendered by counsel, in the administration of the estate, the preparation and presentation of this account, warrants a payment of $200. The accountant is accordingly surcharged in the sum of $300.

It is ordered and decreed that Clarence C. Mendelsohn, executor as aforesaid, do pay the distributions to the persons respectively entitled thereto.

And now, March 15, 1941, this adjudication is confirmed nisi; and in the absence of exceptions, filed within ten days herefrom, such confirmation shall become absolute, as of course.