## Magaziner Estate

*Sterling, Magaziner, Stern & Levy,* for accountants.
*Cohen, Shapiro & Cohen,* for exceptant.
*Alfred D. Whitman,* for Commonwealth.

LEFEVER, J., May 28, 1957.—William E. Magaziner, also known as Wm. E. Magaziner and William Edward Magaziner, died July 13, 1956, having first made a will, dated January 23, 1954, of which he appointed his brother, Louis Magaziner, his nephew, D. Arthur Magaziner, Esq., and Provident Trust Company of Philadelphia as executors. Louis Magaziner predeceased testator on May 19, 1956. Letters testamentary were granted to The Provident Trust Company of Philadelphia and D. Arthur Magaziner, Esq., by the Register of Wills of Philadelphia County on July 18, 1956.

After directing the payment of his just debts and funeral expenses, testator gave his tangible personal property, exclusive of any which may be used in connection with his business or profession, and the insurance policies thereon to such of his sons, William Ward Magaziner, Robert Henry Magaziner and Daniel Edward Magaziner, as shall survive testator (and they have all so survived), as nearly as may be in equal shares. Testator then bequeathed and devised the residue of his estate to the trustees under a deed of trust dated April 17, 1929, to be added to and form part of the trust estate.

Testator directed that no gifts under his will should be subject to anticipation, assignment, pledge, obligations of beneficiaries, execution or attachment. He also provided that the inheritance, estate and other death taxes and interest and penalties thereon payable by reason of his death with respect to property forming part of his estate for the purpose of calculating such taxes should not be apportioned, but should be paid as if such taxes were administration expenses.

Testator did not marry, nor were any children born to or adopted by him, after the execution of the will. He was not survived by a spouse, but was survived

by three children, namely, William Ward Magaziner, Robert Henry Magaziner and Daniel Edward Magaziner, who are all of age.

Transfer inheritance tax has been paid in the amount of $1,000, less five percent discount of $50, and voucher for same was produced.

All of the parties in interest are living, except Louis Magaziner, brother of testator and one of the trustees named in the said deed of trust, who died on May 19, 1956. As appears from the statement of proposed distribution The Provident Tradesmens Bank and Trust Company (successor by consolidation of The Provident Trust Company and Tradesmen's Bank and Trust Company) and D. Arthur Magaziner, Esq., are now the surviving trustees under said deed of trust, dated April 17, 1929, and last amended January 23, 1954.

At the audit, objection was made by Daniel Magaziner and William Ward Magaziner, sons of decedent and beneficiaries of his estate, to two items in the account, namely, (1) executors' compensation in the amount of $3,257.73, and (2) counsel fee to Sterling, Magaziner, Stern and Levy, Esquires, in the amount of $2,500. It was frankly stated that there was no real objection to the executors' compensation, as such, but that the objection was directed to the size of the counsel fee in view of the fact that D. Arthur Magaziner, Esquire, served both as executor and as counsel.

Mr. Magaziner testified at length as to the services rendered by him as coexecutor and as a member of the law firm of Sterling, Magaziner, Stern and Levy, counsel for the executors. This testimony indicated that Sterling, Magaziner, Stern and Levy performed the usual and customary services required of counsel in an estate involving $65,154.57. It was difficult at points to differentiate precisely between the services rendered by Mr. Magaziner in his capacity as coex-

ecutor and his services as one of the lawyers representing the executor. There is always necessarily some duplication in such a situation. However, there was no unusual amount of duplication in this case and the auditing judge finds as a fact that Mr. Magaziner performed his services as executor and as a member of the firm of attorneys representing the executors in a capable, intelligent and proper manner.

It was agreed by all parties that under the "Minimum Fee Schedule" adopted by the Philadelphia Bar Association on October 10, 1955, and presently in force, the counsel fee in this case would be $2,704.63. The preface to the said "Minimum Fee Schedule" is as follows:

"The Minimum Fee Schedule represents the best judgment of the Committee on Economics and the Bar of the Philadelphia Bar Association. It is not a binding schedule. Each lawyer may, of course, charge less than the minimum herein suggested when, in his own judgment, such course seems best.

"In fixing the minimum fees in the schedule, it was assumed that the circumstances were such as to permit the lawyer to complete the service expeditiously, and that no unusual difficulties or problems were involved. The schedule is intended to reflect only the minimum, not an average charge nor a maximum charge, and is of no aid when substantial sums, unusual difficulties or greater responsibilities are involved."

The auditing judge finds as a fact that the legal services performed by Sterling, Magaziner, Stern and Levy were the usual and customary services required in an estate of this size "and that no unusual difficulties or problems were involved". Therefore, the instant case would appear to be the kind of case con-

templated by the Philadelphia Bar Association in fixing its "Minimum Fee Schedule".

It is well settled that in fixing the amount of an attorney's fee the court should take into consideration: ". . . the exact amount of labor, skill and responsibility involved, as well as . . . the rate of professional compensation usual at the time and place . . .": Good's Estate, 150 Pa. 307, 310 (quoted with approval in Berkowitz's Estate (No.2), 344 Pa. 485, 486, and Gleckel Estate, 155 Pa. Superior Ct. 383, 387).

"The over-all service performed by an attorney in the settlement of an estate, or in many forms of litigation, cannot be cut into segments, a fee allocated to each segment, and from simple addition arrive at a just conclusion as to the proper charge that should be made. An artist cannot fix the value of a landscape by totaling the value of the service for painting each tree, or cloud. Neither can a lawyer appraise the value of services performed as to individual items and totaling them, arrive at a conclusion as to what his just fee should be. Such a method does not take into consideration the responsibility incurred for things done or undone, his constant vigilance regarding the affairs of his client, nor any of the many intangibles known to every practitioner and involved in all types of practice and possibly never more so than in the settlement of estates": Hottel Estate, 86 D. & C. 343, 355.

In determining the appropriate amount of the fee, the court may, and should, consider the minimum fee schedule of the local bar association. As properly noted in the preface to the Philadelphia Bar Association Minimum Fee Schedule, quoted supra, such a schedule is not binding in all cases. It is a *minimum* fee schedule for the ordinary usual case. The mini-

mum fee schedule is the composite opinion of the members of the bar association as to the usual and ordinary fee which would be charged in the usual and ordinary case. It follows, therefore, that counsel should receive the fee set forth in such schedule in the usual ordinary case, a smaller fee where less than the usual and customary services are required and a larger fee in a case requiring more than minimum services and, in particular, in any case requiring extraordinary services. In short, the minimum fee schedule may be accepted by the court as prima facie evidence of the appropriate fee. The burden of proof, therefore, falls upon the party contending that the proper fee is other than that contained in the schedule.

This view is set forth with clarity in the opinion of President Judge Wright of the Bedford County Orphans' Court (presently a member of the Pennsylvania Superior Court), in Heltzel's Estate, 52 D. & C. 337, as follows: " 'In these circumstances, we must adopt as the standard of value the measure provided by the members of the bar in the enactment of the minimum fee bill. We do not mean to imply that the minimum fee bill is always the proper standard; for, conceivably, it may in instances provide an excessive as well as an inadequate fee. After all, the fee is to be based upon the value of the service rather than upon the value of the estate. But, in the absence of testimony of the value of the service, we can consider only the value of the estate.' . . . [Hottenstein's Estate, 6 D. & C. 464, 469]. . . . The minimum fee bill of the Bedford County Bar Association provides for a charge of $350 in an estate of $18,000. Following the reasoning of Judge Reno, we must reduce the fee to that amount."

No evidence was produced by the objectants to show that less than the usual and ordinary legal services were required in this case. Based on the reasoning

set forth above, it follows that a fee of $2,704.63 would be fair and reasonable. A fortiori, the $2,500 fee requested is proper.

The objectants argue, however, that D. Arthur Magaziner, Esquire, should receive a lower attorney's fee than usual because he served in a dual capacity, viz., as coexecutor of the estate and as a member of the law firm who were attorneys for the estate.

The evidence indicates that Mr. Magaziner received two-fifths of the executors' fee, viz., $1,303.09. There was no evidence to show what portion of the counsel fee he was entitled to as his net distributive share as a partner in the firm of Sterling, Magaziner, Stern and Levy. However, it is obvious that this will be considerably less than the total fee of $2,500.

It is well settled in Pennsylvania that a personal representative may also serve as counsel for the estate and be compensated for the services rendered in both capacities: Perkins' Appeal, 108 Pa. 314; Griffith's Estate, 96 Pa. Superior Ct. 242; McClure Estate, 81 D. & C. 295, and Page Estate, 4 Fiduc. Rep. 178.

In Griffith's Estate, supra, the court stated at page 245-246: "The appellant argues that even if the amount fixed as compensation to the accountant as attorney be reasonable, an attorney serving in a fiduciary capacity cannot charge commissions and attorney fees. In some jurisdictions this rule prevails, in others, the contrary, 24 C. J. 547, but in Pennsylvania the matter seems to have been definitely settled. An executor who also is an attorney and thereby has broadened the field of his activities in the settlement of the estate, should receive what his services are worth, irrespective of any particular designation which may be applied to such services. In Winsel's Estate, 19 Pa. District Court 659, the late Judge Penrose, judge of the orphans' court of Philadelphia County, stated,

'That counsel was also one of the executors, does not under well settled principles, deprive him of the right to proper counsel fees.' In the Estate of Michael Mc-Closkey, 11 Phila. Reports 95, Judge Hanna drew the distinction that for all services performed within the line of duty as an executor, he is confined to the commissions for services performed, but if an executor who is also an attorney-at-law should in the course of management of the estate perform duties which are ordinarily confided to an attorney, he is entitled to compensation therefor. . . ."

It is noteworthy that in the instant case Mr. Magaziner served as coexecutor and as a *member* of the law firm of Sterling, Magaziner, Stern and Levy. The total amount which he will receive as his individual share of the compensation to the executors and his share of the net profits of the law firm of Sterling, Magaziner, Stern and Levy, will be considerably less than the amount charged by either. Therefore, the rules of law above set forth more strongly apply in this case.

It is also argued by objectants that counsel fee should be reduced because of the fact that Mr. Magaziner was a nephew of decedent and cousin of the objectants. It is true that a merchant frequently sells his merchandise to relatives at a lower price, and that doctors and lawyers may charge a lower fee for professional services rendered to relatives. However, this is a matter of grace and not of right. Reduction of his fee because relatives were involved was a matter solely within Mr. Magaziner's discretion, and he has failed to exercise such discretion. It is not for this court to intervene in such a situation.

The auditing judge concludes as a matter of fact and conclusion of law that the compensation requested by the executors and the fee claimed by the attorneys were fair and reasonable. The objections thereto are

dismissed; the fees are allowed; and the credits therefor in the account are approved.

Request is made in the statement of proposed distribution for the allowance of a reserve of $16,000 for payment of additional Pennsylvania Transfer Inheritance Tax and Federal Estate Tax. Leave will be granted to retain the sum of $16,000 for the purposes as aforesaid, any unconsumed portion of said reserve to follow the award of residue hereinafter made without the necessity of a further accounting.

All parties in interest are stated to have had notice of the audit.

And now, to wit, May 28, 1957, the account is confirmed nisi.