## Rauch Estate

*John C. Schmidt*, for accountant.

SAYLOR, J., March 19, 1968.—Albert Rauch died April 7, 1967, survived by no spouse but by a daughter, Anna Derrickson. He left a will, duly probated, by which he gave to his stepson, John Sedergran, premises 317 West Clarkson Avenue, Philadelphia; to John Rauch, a nephew, the balance remaining in his account at Olney Federal Savings and Loan Association; to Anna Derrickson, his daughter, and John Sedergran, his stepson, each one-half of the residue of his estate. He appointed John C. Schmidt executor.

Letters testamentary were granted to the accountant on April 12, 1967, and proof of advertisement of notice thereof was submitted to me and is hereto annexed.

Payments of transfer inheritance tax were duly vouched as follows: $900, less discount $45, a net of $855, on June 9, 1967; $197.69, less discount $9.88, a net of $187.81, on July 12, 1967; and .66 on September 13, 1967; all on a net estate of $18,118.92.

The sole question presented for adjudication was an objection made at the audit by John Sedergran to the amount of counsel fees. The executor is an attorney and acted in both capacities in the administration of this estate.

In his capacity as executor Schmidt was paid $812.-90. This was based on 5 percent commission on personalty of $12,858.05, and 2 percent on specifically devised real estate converted with the aid of a broker. In his capacity as attorney for the estate Schmidt was paid a fee of $1,281.50, being 5 percent of a gross estate of $21,358. Although the objector, who was not represented by counsel, made his objection to the payment of counsel fees and did not object to the executor's com-

missions, it is obvious that his objection was to the total amount of compensation paid to Schmidt. The objection will be treated as though it had been so made.

## COMMISSIONS

"It is true, of course, that commissions are earned strictly as compensation for the time and labor expended and the responsibility incurred, and that compensation may be arrived at as a matter of convenience by way of percentage, yet, after all, it is a question not of percentage but fair and just compensation, taking into consideration the character of the services rendered and the responsibility so incurred": Anderson Estate, 77 D. & C. 74, 83 (1951).

This statement by Judge Bolger of this court is as true today as it was when it was first written. Commission is compensation for services performed. It is the function of the executor or administrator of an estate to do the actual work of administering the estate. He is to be guided by the advice of his attorney, but the actual work is his. It has long been tacitly recognized by the bench and bar that the difficulties in measuring what is fair compensation for a personal representative in each case would entail more calculation and guesswork than those involved would care to undertake. As a consequence, a rule of convenience has evolved that the personal representative, in the absence of extraordinary services, shall be allowed a commission of 5 percent. When the estate includes realty converted with the aid of a broker it is customary to reduce the compensation of the executor, usually to 3 percent or 2 percent to compensate for the commission charged by the real estate broker. This court considers such commissions to be fair and reasonable.

In the instant case Schmidt took the usual 5 percent commission on personalty and took only 2 percent on

realty. The court holds that such commissions are fair and reasonable.

## COUNSEL FEES

Counsel fees are also compensation for services rendered and for the knowledge and experience with which an attorney guides the administration of an estate. Ordinarily the counsel fee of an attorney who represents an estate is a matter which should be determined by the personal representative and the attorney as one of the first steps in the administration of an estate. It is not the function of the orphans' court to set counsel fees, and such task is undertaken only when an objection to counsel fees is raised by an interested party.

The minimum fee schedule of the Philadelphia Bar Association sets down guidelines for counsel fees for executors and administrators as follows:

"1. Counsel for executors and administrators, exclusive of charges for litigation, on inventoried assets at inventory value and gross income received during the administration

"a) On the first $50,000.00 . . . 6 percent.

\*       \*       \*

"Note 1. The foregoing schedule covers solely the services for counsel for the estate in question and does not cover the work for which the fiduciary is compensated. Where the attorney actually performs all or a part of the work of the fiduciary, the attorney shall be entitled to an additional charge to be paid by the fiduciary out of the compensation received by him as fiduciary".

This court, of course, is not bound by the minimum fee schedule of the Philadelphia Bar Association, but its schedule is nevertheless given considerable weight.

A fee of 6 percent is clearly reasonable for guiding a personal representative through the administration of an estate. It compares most favorably, for example, with the 6 percent charges by a real estate broker for

the performance of his function. The real estate broker's task requires relatively little training or skill. Yet many laymen will pay a real estate broker a 6 percent commission on the *gross* sales price of real estate without any question, even though the entire transaction may have required very little time or skill by the broker and may be concluded in a matter of days. The same layman will object to paying counsel fees in the same percentage to a lawyer who will bring to his task far more in terms of time, skill and education, and where the services will extend over a period of several months and more.

The objector in the instant case states that no counsel fee should be allowed because "There has been no question of law raised". If by that it is meant that no litigation was required, he is correct. Had there been litigation an appropriate charge could properly have been made therefor. But if, by this objection, he means that no legal knowledge was required, then he is incorrect. The administration of an estate from the first step to the last is governed by numerous statutes and rules of court with which only a lawyer can be expected to be familiar. From the point of view of the client the work of a lawyer in estate practice, as in other practice, is like the proverbial iceberg, namely, 90 percent invisible.

Since the amount of the commissions charged and the amount of counsel fee charged are reasonable, does the fact that the personal representative and the attorney are the same person require a reduction in either commission or fee?

As a practical matter, any attorney who is also the personal representative may hire an attorney to represent him. This is the usual practice. If an attorney chooses to perform both functions, as he has the right to do, there is no reason why he should not be compensated for both functions.

This question is not a new one. In Page Estate, 4 Fiduc. Rep. 198 (1954), and in Magaziner Estate, 9 D. & C. 2d 457 (1957), both decided by Judge Lefever of this court, the question of compensation for an attorney who is both personal representative and counsel was examined. In both cases it was held that an attorney who acts in both capacities is entitled to compensation in both capacities. The same result was reached in Perkins' Appeal, 108 Pa. 314, and in Griffith's Estate, 96 Pa. Superior Ct. 242. See also Grier Estate, 31 D. & C. 2d 66 (1963).

The same result may be reached here. The objections are dismissed and the account will be confirmed as stated. . . .

And now, March 19, 1968, the account is confirmed nisi.