## Lowrie's Appeal.

1. When a trustee renders professional services in compelling a guardian to perform his duty, he is entitled to such reasonable compensation as he would have paid, had he been obliged to employ counsel.

2. For any extra services rendered by trustees, they are entitled to extra compensation, beyond the ordinary allowance for receipts and disbursements.

3. A trustee is not chargeable with interest on a fund decreed to be paid to him by the Orphans' Court, until it passes out of the jurisdiction of that court.

4. The judgment of the Orphans' Court, confirming the account of an executor, cannot be overhauled collaterally, and is conclusive in another court.

5. A trustee to invest moneys, ought not to be allowed commissions on each temporary loan he may see proper to make, unless the circumstances of the case, and interests of the *cestui que trust* indicate this course of procedure.

6. It is the duty of trustees under a marriage settlement, for the sole and separate use of the wife, to protect the estate from both her husband and herself.

7. When trustees have acted in good faith, and voluntarily come into court with their account, the costs must be paid out of the trust fund, and not by the trustees.

APPEAL from the decree of the District Court of *Allegheny county*.

The facts of the case sufficiently appear in the opinion of the court, delivered March 3, 1856, by

WOODWARD, J.—The auditor struck out from the account of the trustees, two items of date May 4, 1842, one for $40, and the

other for $20, credits claimed for settling with Arthurs and Miller, because in his judgment the sum of $744 claimed and allowed by them for collecting the debts due from said Arthurs and Miller, is a full and sufficient compensation for all services rendered in that behalf, beyond those required of accountants as trustees.

There is nothing submitted that would justify us in reversing the auditor's opinion on this point. Arthurs and Miller had been guardians of the *cestui que trust*, and as such had some $26,000 of her estate in their hands. Before Judge Lowrie became one of the trustees, his professional services had been engaged to collect this money, and he continued them after the trust was created. For these he was well entitled to be paid beyond the ordinary commission on the moneys received and disbursed, and the $744 were allowed as compensation of these services. But the settling with Arthurs and Miller, for which the $60 were claimed, the auditor considered as included in the services compensated, and nothing is shown us to the contrary. What services were rendered in *settling* as contradistinguished from *collecting*, we have no means of knowing. As guardians, Arthurs and Miller were bound to settle their accounts in the Orphans' Court, and to pay over the moneys in their hands as decreed, and for professional services rendered by either of the trustees, in compelling the guardians to perform this duty, they were entitled to such reasonable compensation as they would have paid, had they been obliged to employ counsel. It is highly probable all they claimed was reasonable, and had the auditor allowed it all, we should see as little reason for departing from his judgment as we do now, that he has allowed most of the claim, and struck out a small portion of it. The auditor's disallowance of the item 16th September, 1843, of $25, a credit claimed for treaty for the purchase of Braddock's fields, stands on a different footing. The trustees had the written authority and request of Mrs. M'Kelvy to make this negotiation, and they allege that they acted upon it, thus incurring trouble and rendering services for her beyond the trust, but the auditor thought that because these services were rendered in regard to a contemplated investment of a part of the trust fund, they were covered by the general allowance of two and a half per cent. commission. This is a mistake. It was decided in *Stevenson's Estate*, 4 Wh. 104, that two and a half per cent. is deemed nothing more than a reasonable commission for the " *responsibility* " in receiving and disbursing trust funds. Any extra services rendered by the trustees should receive additional compensation. The negotiation for the purchase of the farm known as Braddock's fields, was carried on for about a month before it fell through, and the charge therefor of $25 was most reasonable, and should have been allowed. The auditor is not quite clear in

his statement of facts relative to the settlement in the Orphans' Court of the account of W. H. Lowrie, executor of M. Pride, but we infer from what he says, that the auditor's report on that account was confirmed on the 20th February, 1850, finding a balance in the hands of the executor, payable to the trustees of Mrs. M'Kelvy, of $1659.06. The trustees ought not to be charged with any part of this sum until after it passed out of the jurisdiction of the Orphans' Court. It cannot be in the hands of two different trustees, acting for different interests and subject to the jurisdiction of two different courts at the same time. All the interest proper to be charged up to the time of the confirmation of the executor's account was allowed, we must presume, by the Orphans' Court, and none should be charged anterior to that date. The judgment of that court is conclusive, and it cannot be overhauled collaterally. The $96 charged by the auditor under date of 31st December, 1849, was therefore a clear error.

A trustee to invest moneys ought not to be allowed commissions on each temporary loan he may think proper to make, or else he might easily consume the interest in commissions, and leave no income for the *cestui que trust*. The general views of the auditor on this point are certainly correct; but he seems to have overlooked the fact that there was a good reason for making temporary loans in this case, and of course charging commissions on them. By the answer of the trustees under oath, it appears that Mrs. M'Kelvy was desirous of directing the mode of investment, and that several times she contemplated the purchase of a farm, and desired the funds to be accessible in case she should find one to suit her, and that under these circumstances the money was placed on temporary loan with interest, subject to recall on thirty days' notice. The sole purpose of making these temporary loans was, that the funds might be drawing interest while awaiting her decision. It is evident that this course of proceeding was better for her than to keep the money in bank without any increase at all; and it is eminently just that she should pay the trustees out of the profits, made by their diligence and care, the usual commissions for receipts and disbursements. The sum of $277.64, charged for commissions on temporary loans, was therefore improperly rejected by the auditor.

As the trustees did not show when the money on the bond of M. F. Irvin came to their hands, the auditor was justified in believing, from their omission to charge interest after the 1st of January, 1846, that the money was paid to them on that day.

This disposes of all the exceptions of the accountants, and also of the second exception on the part of the *cestui que trust*.

The fourth exception of the latter seems to have been properly disposed of by the auditor. The first is general, and specifies nothing. The third complains that the auditor did not charge inte-

[Lowrie's Appeal.]

rest on $6500 from January 11, 1851, to March 12, 1851, which sum the exceptants say they wrongfully refused to disburse in the manner prescribed by the deed of trust.

The accountants were trustees under a marriage settlement for the sole and separate use of Mrs. M'Kelvy. The very object of the trust was to secure the fund from the control of the husband. They were ready enough to make a proper investment under her direction in a farm that would secure her a home; but, when an order was presented from her for $6500 for no other purpose than to place it in his hands, they did right to refuse to pay it unless sanctioned by the court, or unless assured that the money was to be used for her benefit, and not for that of her husband. It was their duty to protect her estate from both her husband and herself, and their answer shows that they had reason to believe that this fund was to be turned over to the husband to be risked in his own business. The delay occasioned was only two months, when the action of the court relieved them from further responsibility. There is no merit in this exception.

As to the imposition of the costs upon the trustees, it is to be remarked that they were not drawn by compulsion into court, but came voluntarily, filing their bill for a settlement of their accounts, as they had a right to do. They have been ready to pay over the funds in their hands as the court should decree. There has been no vexatious delay, no fraud, no lack of fidelity to the trust, no such fault in all they have done as should be punished with a sentence of the costs. They must be paid out of the fund.

The decree should be corrected as follows:
Amount found in the hands of trustees by the auditor, $1066.83
From this should be deducted the credit for

| | | |
|---|---|---|
| negotiating for Braddock's fields | . . | $25.00 |
| For error in charge of interest . | . . | 96.00 |
| Commissions on temporary loans | . . | 277.64 |

398.64

Balance in hands of trustees subject to costs . $668.19

And now, to wit, March 3, 1856, this cause having been heard and considered, it is ordered and decreed that the auditor's report be corrected in the particulars above specified, and that the decree of the court confirming the same be then affirmed, but that so much of said decree as directs the accountants to pay costs be reversed; and it is here ordered and decreed that the costs be taxed by the prothonotary according to the practice in equity, and be paid out of the estate in the hands of the trustees, and that the residue of said estate be delivered and paid to their successors in the trust.