## Straus Estate

62

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Elihu A. Greenhouse,* for accountant.

*William C. Ferguson, Jr., Paul VanReed Miller* and *Strong, Sullivan, Saylor & Ferguson,* for Land Title Bank and Trust Co., Trustee, exceptant.

*Thomas F. Devine* and *Sundheim, Folz, Kamsler & Goodis,* for Bankers Securities Corp., Assignee, exceptant.

*Henry C. Remick,* for Thomas M. Dougherty and Land Title Bank and Trust Co., surviving executors of Estate of Frederick G. Nixon-Nirdlinger.

*C. Leo Sutton* and *Joseph C. Henry,* for Carolyn S. Parke et al., remaindermen, and Alice S. Bernheimer, surviving life tenant.

*Boyd Lee Spahr,* for Girard Trust Co., succeeding trustee.

KLEIN, J., May 27, 1949.—Emanuel Straus, testator, died in 1897, leaving an estate in excess of $600,000. Under his will trusts were created for his six surviving children, one of whom is still alive and for whom the trust continues.

Testator named as executors and trustees a son, Joseph, who died in 1907; a son-in-law, Samuel F. Nirdlinger, who died in 1918, and Arthur S. Arnold, who died in 1945. Mr. Arnold was a grandson of testator and also a beneficiary entitled to a share of the remainder. He served as fiduciary of his grandfather's estate for almost 50 years and for more than half of this period, following the death of his cotrustees, he acted alone. The present account was filed by Mr. Arnold's daughter, Alma H. Kline, as executrix of his last will and testament.

With Mr. Arnold's death any harmony which existed in this family disappeared and disputes arose. The other beneficiaries made many requests for surcharge and vigorously objected to requests for compensation for legal services rendered by him in his lifetime and by his successor after his death.

Arthur S. Arnold was a respected member of the Philadelphia bar for more than 55 years, and enjoyed an excellent reputation for honesty and fair dealing. He accepted the responsibility of the administration of his grandfather's estate as a position of trust and served his relatives well and faithfully for most of his lifetime. His greatest sin in his long association with this estate was that he grew old and his judgment, in his declining years, became less acute than when he was in his prime.

There is not the slightest question that in Pennsylvania a trustee, who is also a lawyer and acts as his own counsel, is entitled to be paid for his legal services. In Griffith's Estate, 96 Pa. Superior Ct. 242 (1929), the late Judge Trexler quoted with approval the following statement made in Perkins' Appeal, 108 Pa. 314:

"If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reason-

able compensation as he would have paid had he been obliged to employ counsel. If authority for a principle so manifestly just and reasonable as this be required it may be found in Lowrie's Appeal, 1 Grant 373."

See also Heltzel's Estate, 52 D. & C. 337 (1945).

A stipulation was filed by counsel, from which it appears that 11 accounts were filed during the existence of this trust. Although it is evident from a study of the voluminous records in this estate that extensive legal services were required in its administration, counsel fees aggregating only $3,600 were paid during this entire period, of which but $2,150 was paid to Mr. Arnold.

The last account filed by Mr. Arnold in his lifetime was in 1943, and this was audited by Judge Sinkler. No claim for attorney's fees was made in this account, and a schedule of distribution was prepared and approved by Mr. Arnold in 1944, in which no provision was made for counsel fee.

In the present accounting the auditing judge awarded to the estate of Arthur S. Arnold a fee of $6,000 for legal services rendered by him in his lifetime. Mr. Sutton, in behalf of certain of the exceptants, contends that Mr. Arnold's failure to claim a fee at the audit before Judge Sinkler bars his personal representatives from making such a claim at this time.

It is true that ordinarily failure to claim a counsel fee at an audit will technically preclude counsel from making claim at a later accounting for compensation for services rendered up to the time of such audit. See adjudication of Judge Hunter in Estate of George C. Hixon, January term, 1925, no. 432 (not reported).

This rule, however, must be applied in a benignant spirit to make certain that it does not result in hardship and injustice to faithful counsel, who in unselfish spirit, are willing to delay presentation of their

claims for services until such time as payment will be most convenient for the estate.

Judge Sinkler, in his adjudication of August 13, 1943, said:

"The petition for distribution concludes with a recital that a substantial part of the principal of the trust now before the court is invested in real estate which was acquired under foreclosure proceedings of mortgage investments held by the decedent and that a present distribution of principal, except by agreement of the parties, is impractical. The petitioner has requested that the distribution of principal be postponed pending the sale of the real estate."

It is clear from a study of this record that Mr. Arnold did not regard this accounting as final in nature. He continued to administer the assets, without objection from the beneficiaries, as if the award had been made to him as trustee instead of to them as distributees. It is also evident that he did, in fact, perform considerable work after the date of the adjudication in disposing of these assets.

In the last analysis, the responsibility for determining the amount of counsel fees rests primarily with the auditing judge. He is in the best position to pass upon the justness and fairness of the fees requested. His findings will not be disturbed unless it is obvious that an error has been committed: Davidson Trust, 354 Pa. 333 (1936); Warden Estate, 348 Pa. 224 (1944). A careful study of this involved record convinces us not only that no error was committed by Judge Bolger, but that the award, as made, was eminently just and fair under all of the circumstances of this case.

We are also all of the opinion that the exceptions filed with respect to the allowance of the credit for commissions paid to Samuel Kravitz in the sum of

$1,269.33, and the allowance of counsel fee of $3,500 to Elihu A. Greenhouse are without merit.

On December 21, 1912, Mr. Arnold assigned one half of his one-eighth interest in the trust remainder to the Real Estate Title Insurance and Trust Company (now Land Title Bank and Trust Company). On August 12, 1944, he assigned the balance of his interest in the estate to Bankers Security Corporation as security for a loan. The auditing judge entered certain surcharges against Mr. Arnold in the aggregate sum of $17,849.72, against which items of credit in the sum of $10,995 were allowed, resulting in a net surcharge of $6,854.72. Judge Bolger, in his supplemental adjudication, ruled that the assigned interest held by the Land Title Bank and Trust Company was subject to set-off for the surcharged amounts, but limited the set-off to that portion of the estate which had not been previously distributed. He also held that the interest held by the Bankers Security Corporation was subordinate to the other beneficiaries with respect to the set-off.

The auditing judge relied upon Hart's Estate (No. 5), 203 Pa. 503, 507 (1902), in which the Supreme Court said:

"Up until distribution, he did not hold his own share as an individual, but as a trustee under the will. If it then turned out that he had for any purpose illegally converted assets to the value of it, nothing remained for him; . . ."

See Kenworthy's Estate, 21 D. & C. 150 (1934); 2 Scott on Trusts, sec. 257.3, also referred to in the adjudication. See also 1 Bogert, Trusts and Trustees, sec. 192. We think the auditing judge was clearly correct in his conclusion with respect to this question.

Mr. Ferguson, on behalf of the Land Title Bank and Trust Company, trustee of the one-half share assigned by Mr. Arnold, contends that the approval

of the schedule of distribution in accordance with Judge Sinkler's adjudication of 1943, in which undivided fractional shares of the assets were awarded to the beneficiaries, fixed the rights of the parties. He claims that the decree of distribution was, in effect, a judgment of this court and that thereafter the Land Title Bank and Trust Company became the owner of, and was entitled to receive, its one-sixteenth undivided share of the assets therein shown. He further contends that whatever Mr. Arnold did thereafter by way of liquidating these assets was not done as trustee, but only as the voluntary and unbidden agent of each of the parties owning the assets, and that any liability he incurred thereafter could not, in any way, affect the rights created by the decree of distribution.

Ordinarily we would agree with Mr. Ferguson's contentions, but we think they are without merit in the special circumstances of this case. There can be little question that, generally, where a schedule of distribution is approved by the court, awarding the assets of an estate in kind, the rights of the fiduciary to administer the assets further ceases and the beneficiaries become the owners of the property, with full right to determine how they should be liquidated. Further participation by the trustee in the management or liquidation of the assets is in the capacity of agent for the parties, only.

Most of the assets of this trust, as shown by the account filed by Mr. Arnold in 1943, were unconverted assets, consisting of real estate and mortgages, and the difficulties which would arise in distributing these assets were referred to by Judge Sinkler in his adjudication. Thereafter, Mr. Arnold, apparently with the consent and approval of the parties in interest, in any event without objections from them, retained possession of the trust res and continued to administer these

assets as if he were still trustee, with full power to act with respect thereto.

The approval of the schedule of distribution should have precluded Mr. Arnold's continuing to administer these assets as trustee. The schedule cannot, therefore, be regarded as a formal decree of distribution. It was more in the nature of a mathematical calculation, made for the benefit of the various beneficiaries of the estate and showing their respective interests.

The schedule of distribution, approved by the parties in interest, shows a balance in the estate of $227,372.66, consisting of:

| | |
|---|---:|
| U. S. Bonds, as reappraised | $ 8,315.60 |
| Real Estate (Schedule "B") | 136,617.44 |
| Mortgages (Schedule "C") | 73,010.00 |
| 19 shares Atlantic Company for cultivation of cranberries | 57.00 |
| Old coins | 6.00 |
| Cash | 9,366.62 |
| | $227,372.66 |

Following Mr. Arnold's death, his daughter filed an account in this court, styled account "of Arthur S. Arnold, Surviving Trustee, stated by Alma H. Kline, Executrix of his last Will and Testament". In this account she charges Mr. Arnold's estate with:

"Balance of principal per account
as awarded                $227,372.66
consisting of . . ."

and then lists the identical assets contained in the schedule of distribution. This certainly indicates that Mr. Arnold, without objection from the interested parties, acted as if Judge Sinkler's award was directly to him as trustee and not to the beneficiaries.

This account was treated by Judge Bolger, in all respects, as a final account of a deceased trustee, without objection from the beneficiaries. Extensive hear-

ings were held and claims were made and allowed against Mr. Arnold's estate for surcharge for mismanagement by the trustee in liquidating these assets during the period following Judge Sinkler's adjudication. If the position of exceptants is correct, then Judge Bolger was completely without authority to pass upon the merit of these claims for surcharge. They should have been passed upon in proceedings instituted against Mr. Arnold or his estate as agent for the distributees.

In our opinion it is now too late for exceptants to raise the technical objection that Mr. Arnold's rights and duties as trustee terminated with the approval of the schedule of distribution. Such objection should have been made before the audit was commenced. Having submitted themselves, without objection, to Judge Bolger's jurisdiction, they cannot, after the matter has been adjudicated, complain of the procedure, even though it may have been technically questionable. They are now estopped from raising these questions.

There is, however, one objection raised by Mr. Ferguson which we think is valid. He contends that the surcharge which Judge Bolger entered represents a personal liability of the deceased trustee, for which his own estate is primarily liable. He maintains that the insolvency of Mr. Arnold's own estate should first be established before his assignees are called upon to meet any portion of the surcharge. With this we all agree. We therefore direct that liability on the unpaid balance of the surcharge should be suspended until it appears that payment cannot be made out of Mr. Arnold's personal estate. If his estate can satisfy the surcharges, all or in part, then the fund so retained can be paid, in full or as to any unrequired part, one half to the Land Title Bank and Trust Company, trustee, and the balance to the Bankers Securities

Corporation, the other assignee, to the extent necessary to satisfy its claim.

We are in full agreement with the auditing judge with all the other conclusions reached in his comprehensive adjudication. The exceptions are therefore all dismissed, and the adjudication, as modified in this opinion, is confirmed absolutely.